UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HAROLD BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 2:03-cv-0169-RLY-WGH |
| ) | |
| NURSE ANNE BAKER, ) | |
| OFFICER FRANK BRANNICK, ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

    The motion for summary judgment of defendants Anne Baker and Frank Brannick in this civil rights action brought by Harold Brown, an Indiana prisoner, is **granted.** The reason for this disposition is that the pleadings and the evidentiary record show that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. *Westra v. Credit Control of Pinellas*, 2005 WL 1274277, *1 (7th Cir. May 27, 2005) ("Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'")(quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). This conclusion rests on the following facts and circumstances:

    1.    Brown has been diagnosed with Hepatitis C. Because of this, a physician has directed that Brown's blood be drawn every six months. Brown was escorted to a medical examination room at the Wabash Valley Correctional Facility on March 5, 2003, to have his blood drawn pursuant to this procedure. Frank Brannick was the escorting officer. Brown refused to have his blood drawn by Anne Baker, who is a nurse, and Brannick stayed in the room. Brannick informed Brown that she would not draw his blood unless Brannick remained in the room. Brown's blood was not drawn.

    2.    Brown contends that the foregoing is actionable as violative of his right to medical privacy. Specifically, he contends that the defendants' insistence that Brannick remain in the room while Brown's blood was to be drawn was violative of this right. He seeks damages.

3. Brown's claim is asserted pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 114 S. Ct. 807, 811 (1994). It is at this threshold junction that Brown's claim fails.

4. It is by no means clear that the right asserted by Brown exists. "Whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question." *Massey v. Helman,* 196 F.3d 727, 742 n.8 (7th Cir. 1999) (citing *Anderson v. Romero,* 72 F.3d 518, 522-23 (7th Cir. 1995)). In *Anderson,* 72 F.3d at 523, the Court of Appeals could not "find any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records," but noted in dictum that the cruel and unusual punishments clause of the Eighth Amendment might protect against a state's dissemination of "humiliating but penologically irrelevant details of a prisoner's medical history." If the right to medical privacy in the circumstances presented here does not exist, Brown cannot recover, nor can he even proceed, for without a predicate constitutional violation one cannot make out a *prima facie* case under 42 U.S.C. § 1983. *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992).

5. Even if a limited right to medical privacy does exist, this right was not violated under the circumstances presented in this action.

    a. Prisoners cannot enjoy greater privacy protection than individuals in free society, *Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir. 2001), and some amount of sharing of medical information in areas where it might be overheard by other patients--e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office--is commonplace.

    b. Additionally, if it is concluded that the Due Process Clause of the Fourteenth Amendment protects inmates such as Brown from the unwanted disclosure of "information relating to the status of [their] health," *Gowins v. Greiner,* 2002 WL 1770772, at * 9 (S.D.N.Y. July 31, 2002) (quoting *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir. 1994)), moreover, prison officials may "impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir. 1999)). The setting in which Brown's blood was to be drawn was, without doubt, reasonably related the prison's legitimate penological interest of maintaining supervision of Brown while he was with a healthcare provider and outside of his cell. See *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984) (prison environments are highly regulated, and strict order must be maintained; prison administration must be constantly vigilant to prevent escape plots, reduce the flow of weapons and drugs into the building, and maintain the safety and welfare of inmates, jailers, and the public).

    c.    The court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.* Here, Brown has not presented even a shred of evidence that Brannick's presence when Brown's blood was to be drawn was not reasonably related the prison's legitimate penological interest. The circumstances here, moreover, bear no resemblance to the extreme situation considered by some courts which involved the purposeful dissemination of intensely private medical information about the complaining inmates. *See Doe v. Delie,* 257 F.3d 309, 317 (3d Cir. 2001) (involving HIV-positive status); *Powell v. Schriver,* 175 F.3d at 112 (involving HIV-positive status and transsexualism); *Doe v. Magnusson,* 2005 WL 758454 (D.Me. March 21, 2005)(discussing the point and reviewing decisions).

    d.    Brown also argues that he was denied medical care, but the undisputed facts show just the opposite, *i.e.,* that he *refused* to have his blood drawn when the conditions on which he insisted for that to occur were not met. *Rodriguez v. Briley,* 403 F.3d 952, 952-53 (7th Cir. 2005) ("deliberate noncompliance with a valid rule does not convert the consequences that flow automatically from that noncompliance into punishment . . . [B]y failing to comply with a reasonable condition on being allowed to leave his cell, and as a result missing out on meals, Rodriguez punished himself.").

    6.    "Federal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987)). Brown has not identified a genuine issue of material fact as to his claims against the defendants. The motion for summary judgment is therefore **granted**.

**IT IS SO ORDERED.**

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Date: 06/10/2005